May it please the Court, I'm Claire Leary. I represent the defendant in this matter, and I'm here to request that the case be remanded for resentencing back to a closed courtroom in front of Judge Wright, where the defendant can argue freely and exercise his right to allocution at sentencing. Kennedy, counsel, I have two questions about your argument. One is, when I actually read what happened at the sentencing, it looks as though the judge gave him his right to allocution, he allocated, and then he said, that's all I have to say. So he got allocution. And the second is, as for the judge clearing and closing the courtroom, as you requested, it looks to me as though the relevant authority is in Rule 32, not the constitutional right to allocution, but the specific provision of Rule 32. That says, upon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32I-4. It speaks right to it, it's plainly discretionary, it says may, and it plainly requires a showing of good cause. The judge expressly considered it, and he said, I know all about what it is that you want to tell me, I've studied it in the record, I'm crediting it, he calls it the elephant in the room, so I don't see what the abuse of discretion is. He, well, I would like to address the abuse of discretion also, Your Honor, but the rule I think for Rule 32 is for a different, the statement that's made is for a different kind of statement. In Rule 32, it says, and I'm not saying that it's for a different kind of statement,   It's for a different kind of statement. And it looks to me as though it was for exactly this. I can brief it, Your Honor, but I'm not, I. You did brief. You had your chance to brief, but I thought, I thought that was speaking to exactly this point and exactly this need. I don't believe it is, Your Honor, but I don't have the authority before me to argue that now. He does have the right to allocute at sentencing. It's an absolute right. It's also under Rule 32. And the right is one of the. Yeah, but he doesn't have an absolute right to a closed courtroom when he does. No, he does not. He has an absolute right to allocute, but as for a closed courtroom, it looks as though that's a matter of discretion. Your Honor, I'd have to say that I, there are two things. The first is that the proceedings had already been closed, or at least the documents had. The government had moved to seal its sentencing memorandum. It's a big difference, though. I'm sorry? It's a big difference. For the sealing of the documents, Your Honor? Yes. As I read the case law, it seemed to me that the, that there was no difference stated in. Well, our case law, because of the qualified right of access to the courtroom, says that before you close a court, you have to show a compelling interest. You have to show a probability that the compelling interest will be infringed, and you have to consider, and I say you, I'm talking about the district court, has to consider less intrusive alternative means. Those three things have to be considered. The press has to be notified, and the district court has to make findings. That's what we said in the Phoenix newspaper case. We said it consistently. So you make the motion, I'd like to seal the courtroom so we can talk about this. The district court says no. In order to say yes, he would have had to do all of those things. And so what's wrong with that? Because, Your Honor, those things had been done by the district court, and that the government had moved to seal its sentencing memorandum. Oh, no, that's different. That's completely different from access to open courtrooms. And that's what we've said. There may be reasons to seal documents. We've been pretty liberal about sealing documents. But when you keep the public and press out of the courtroom, you have to make some very specific findings. That's what our case law requires. We said it's error for the district court to proceed to close proceedings without going through these procedural steps. So given that compelling case law that says you can't close it unless you do all this, when you make the motion to seal the courtroom, why did the district court not go through the procedure and say, I'm denying the motion? Because the district court, Your Honor, had sealed the documents in the case, and it had sealed the documents upon the government's request that or its statement that the defendant had cooperated and that the – having the documents open in the file might jeopardize him, given his cooperation. I didn't understand the because. I understood everything you said except the word because. Why does sealing the documents make it incumbent on the court to close the court during allocution? What does – I didn't understand your question, Your Honor. What does sealing the documents mean? Cause means one thing causes the other. That's right. Or one thing compels the other. And you said that it was error for the judge not to close the courtroom because the judge sealed the documents. I didn't understand why sealing the documents compelled or should cause closing the courtroom. I'm saying that as we approached sentencing that day, we had – the record stood with the sentencing documents filed under seal. I had – It happens in almost every case, doesn't it? No, Your Honor. Not necessarily the sentencing memorandum, but we have the pretrial report. Sentence reports always come under seal. Sentence report, yes, Your Honor, but the sentencing memorandum filed by the parties would not be filed under seal, to my knowledge, unless the defendant had cooperated. And then the – it's sealed because the cooperation is set forth in the sentencing memorandum generally. In every – Let me switch gears for a second, not to interrupt, but our time is limited. Nobody ever told the district judge – you didn't and the defendant didn't – that he wanted to talk about this in his allocution. Isn't that true? Your Honor, I had no opportunity to do that. I – Well, no. The district court said, do you have anything to say to the defendant? Now, at that point, you could have said, he would like to make this statement in a closed courtroom, or he wants to say more, but he can't. But at that point, how did the district judge know that he wanted to say anything about this in his allocution? Your Honor, he has the right to allocution is one where he is supposed to be able to say anything he wishes. I guess we weren't communicating. That wasn't my question. I understand that. But in order for the district – for us to say the district court got this wrong, the district court – and the error is so plain that we need to reverse this. The district court has to have the opportunity, really, to say, all right, I didn't understand that you wanted to talk about it, that the right of allocution was at issue. How did the district court know in this proceeding that the right of allocution was at issue when you made the motion to seal the courtroom because you wanted to talk about another issue? That's correct, Your Honor. I talked with nothing about the right of allocution. I felt severely restrained talking in an open courtroom about a defendant's cooperation. I have an obligation to represent him, Your Honor, to get him a sentence that's fair, that's good, that acknowledges what he's done before, knowing that, of course, the court is going to try to give him a sentence that acknowledges all the bad he's done. I also, though, Your Honor, have to consider that the man is in danger talking in front of a lot of people. I must proffer to Your Honor that in my 21 years of practice in the Northern District and in the Eastern District of California, for any case where a defendant has cooperated, I have approached the bench or the clerk, the clerk, prior to the sentencing and said, can we close the courtroom or can we go last when no one else is around? I have never had the motion denied. In a few cases where the court, the clerk has said, oh, it's not really convenient or the government has said, can we go last, can we go last, it has always occurred that way. I don't have it in the record again because there was no way for me to make the record in this case, but I've talked to many other lawyers since this sentencing has occurred and they've said, no, they have never filed a motion because they have never, ever in their practice had a sentencing judge say, no, it may not be closed. It sounds as though the district courts have been proceeding in contradiction to our cases. You've got to make a motion, seems to me. Rule 32 seems to be the motion. If you want to seal it, you make your motion under Rule 32 so that everybody has an opportunity to know that you're making a motion to seal the courtroom. Your Honor, I can see what you're saying, and I obviously will do it differently from now on, but that doesn't help my defendant in this case. But getting back to whether this district judge abused, the district court abused its discretion, if you had said at the time, and I can understand, you said I made the motion, I was shut down at the beginning, and I didn't want to renew it, but it didn't strike me, looking at the record, that the district court ever understood that the defendant wanted to say something in private, that it was, that the right of allocution was at issue. It looked to me, and you can tell me whether I'm wrong or not, that the district court was saying, I understand the issue, it's the elephant in the room, you don't need to talk about it except elliptically. I don't see in that argument anything that said, well, that impinges on my client's right of allocution because he wants to talk about it. Your Honor, and again, if I had ever foreseen that this would happen, I would have phrased it differently and I would have briefed it and I would have explained it differently to Judge White at the time. But the fact is, when Judge White said, you can refer to this elliptically if you'd like, I – there was no way for me to convey to the defendant that he could elliptically, through his Tagalog interpreter, explain that, indeed, his co-defendants had told him, you're the snitch, you're the guy who got all of us here, this is your fault, you shouldn't have done that. I don't know how I could have posed that to the Court. I would go back to saying that when the Court sealed the sentencing memorandum, when it granted the government's motion and my motion, that was the status quo, I thought, that things were under seal. It appears to me, from reading the Oregonian case and from reading the Supreme Court case, that in those, the press then comes forward. The press had access to the docket. They could have seen the documents were filed under seal. If they wanted in, I would have done that. Roberts. Counsel, why don't you conclude your answer, and unless my colleagues have further questions, our time is run. Thank you, Your Honor. I just wanted to say that the – neither the abuse of discretion nor the plain-error standards of review are what apply here. The only standard of review that the circuit has looked at in this instance is whether the Court could have imposed a lesser sentence. No objection need be made, and no other record need be made. And Judge White did recognize on the record that a lower sentence was imposed. Thank you, Your Honor. Good morning. May it please the Court. My name is Jeff Finnegan. I'm representing the United States in this matter. Your Honors, the district court did not err here for two reasons. As you have already pointed out, Judge White fully complied with Rule 32. He specifically and personally addressed the defendant, Mr. Bygon, asked him if he had anything to say, anything, which was very broad, allowed him to say, to speak on any topic that he wanted. Mr. Bygon took that opportunity and concluded his statement with, that's it, communicating to the Court that, in fact, he had said everything that he wanted to say. Let's take a hypothetical. Let's assume that at the point when the judge said, do you have anything to say, either he or his attorney had said, he can't speak freely, he would like to allocute, but cannot talk because of the considerations that we've discussed. If then the district court said, well, even with those, I'm not going to comply with your restrictions, go ahead and allocute, do you think that's reversible error? If I comply with the restrictions. Yeah, in other words, well, I'm not going to close the courtroom. You can say whatever you want to, but I'm not going to grant your motion. I do not think that would be error, Your Honor, because of the standard that you articulated earlier, and that is that the defense has the burden of proof for closing the courtroom and giving the district court specific facts that the district court can then make specific findings and put those findings on the record, which justify closing the courtroom. And those facts must show that there is a substantial likelihood that a compelling interest would be harmed by the defendant allocuting in an open courtroom about his cooperation. And I would note that although it's not in the record that the defendant, in fact, had any fear, it's not in the record that any of the other defendants had threatened this particular defendant. No, but you filed your sentencing memorandum under seal, too, right? I mean, let's be realistic. You had a witness that you felt if you wanted to talk about these matters, you had to put it under seal to begin with, so it's not a frivolous argument by any means. I mean, he didn't – if, in fact, he wanted to talk about it to the judge and had communicated that, I'm not sure that he doesn't have a pretty good point that his right of allocution might have been diminished. Well, the sentencing memorandum was put under seal because, in fact, it did detail the defendant's cooperation. That doesn't necessarily mean that that detail is then going to be discussed in open court. And regardless of that, the requirements that Your Honor has set forth still need to be followed in order to close the courtroom, which was not done here. And as counsel has pointed out, if, in fact, co-defendants had threatened the defendant and he truly had a fear, which, again, is not in the record, that begs the question, why does the courtroom need to be closed if these co-defendants who he is afraid of already know that, in fact, he is the cooperator? That's why this record doesn't have any evidence of any harm or any prejudice in it. Wait a minute. I'm not sure I understood that. Are you saying that the defendant already knew, that the co-defendants already knew that he was one of the snitches? No. I'm saying that's not in the record, Your Honor. That's what Ms. Leary just said in her argument, is that there's a hypothetical that Mr. Bigon felt he couldn't speak because co-defendants had said, you're the snitch, that's why we're all here. Those facts aren't in the record, but if those were the facts, if co-defendants had said to him, you're the snitch, that's why we're all here, that implies that they already know he's the cooperator. So there would be no point in sealing the place. Exactly. Well, the judge ruled before you had an opportunity to state your position to the motion to close the courtroom. What would have been your position? Whether or not the courtroom could have been closed? Yes. Your Honor, my position would have been to either object or to submit it to the court to make that decision. I would not have concurred. I couldn't concur based on that record. So, Your Honor, returning to the Rule 32 here in Judge White, Judge White obviously  There were no facts set forth for Judge White to close the courtroom. In fact, when Judge White indicated that he would not close the courtroom, he used the words, I don't think it's necessary, and therefore I'm not going to do it. Saying that I don't think it's necessary obviously invites defense counsel, if defense counsel feels otherwise or wants to speak further to do so. Judge White also said that you may refer to this elliptically if you wish to. So the topic was left open to be referred to and discussed. And defense counsel's response at that point was not I object or I do want to speak further, but it was actually, the quote is, I see. I think it's justifiable for Judge White to actually interpret that as she potentially agrees with what Judge White has just said. Judge White set forth his reasons why he didn't feel the courtroom needed to be closed. When a lawyer says, I see, or okay, or thank you, Your Honor, that's a waiver? No. I'm saying that would be one reason. That's a bit of a stretch, I think. We all have the verbal utterances we make in response to what we hear from the bench. I don't think I see, it was just an acknowledgment of the ruling is all I took it. I think a lot of us said yes, Your Honor, after the judge hammered us. Or very well, Your Honor. Thank you, Your Honor. Maybe the jury wouldn't have figured out we just got hammered. That certainly happens. In any event, there was no objection put on the record for, they would have alerted Judge White that either the defense counsel or the defendant wanted to say more during the allocution. So there was nothing in the room. Is Ms. Larry right, to Mr. Trinigan, that this is a matter of routine in the Northern District, that the courtrooms are sealed or that things are put at the end when you have cooperating witnesses that might be discussing sensitive matters at sentencing? I don't know that I can say that it's a routine. Have you experienced it? Yes, I have had cases with cooperators where, upon a request without a motion, a courtroom has been sealed. That has happened. I can't say it's happened numerous times or it's routine, as you've just asked. So from this record, there was nothing for – Judge White would have had a divine from this record, again, that the defendant wanted to say more, and there was simply nothing in the record for him to do that. So, therefore, based on the record, there – first of all, there simply was no error. Even if the court were to find error, there certainly was no plain error, because there is no evidence, nothing from the record to indicate that there was a substantial likelihood that any compelling interest would have been harmed. The way a sentencing hearing started was that defense counsel asked Judge White to do something which, by Supreme Court authority, he's actually forbidden to do, and that is close the courtroom without specific findings placed on the record. Those findings were never set forth, so, based on this record, Judge White was actually obligated, he was compelled under the law to, in fact, keep the courtroom open, and he did that. He afforded the defendant his opportunity to allocute. The defendant took that opportunity and did, in fact, allocute. Based on this record, Judge White did absolutely nothing wrong, and to reverse and remand would really offer no guidance to him as to what he had done wrong or what should be done in the future. Based on that, and if there are no further questions, we would ask that the Court affirm. Roberts. Thank you, counsel. You've exhausted your time, but we'll give you one minute for rebuttal. Thank you, Your Honor. I wanted to speak again to the routine in the Northern District, and the routine is what I absolutely, what I pose to Your Honor in every case I've had where there's a cooperating defendant. Indeed, the other – there was another cooperating defendant in this case, in this very indictment, and the courtroom, as I read it from the docket, was closed. I gather, I mean, reading between the lines of this case, you appear to be surprised. Is that – you were surprised when the courtroom wasn't closed? Is that right? I was completely surprised, Your Honor. As I said, I will do things differently in the future. I will make a motion, and I will file it beforehand, and I will ensure that the press has access to that if that's the way it should be done. I've never seen anyone else do it. I know of no criminal practitioner who's done it. I – certainly in the cases, the published cases, there are cases where the press has come in and said, we want to be in this court. Right. That's because they know about it. You see, that's the problem when you make a suspending motion to seal a courtroom, and if the reporter is there, the reporter may feel aggrieved. The reporter's not there, or the press is there. They may feel aggrieved, but that's why you provide notice. And I don't think the press is uncooperative or insensitive to these matters, but that's balancing the rights. I mean, that's just the right balancing that district courts have to do, in my view. I see that. I see that, but that's why I also tried to pose to Judge White an alternative, and that was to go at the end of the calendar, which would have been sufficient. I mean, the transcript then is not sealed, probably, but there isn't anyone around, and the defendant is then not threatened by other presence, other people in the courtroom. In Magwood, the case cited by the government, the court from the Third Circuit, the court says that this is the opportunity for the defendant to have full access to the court and be able to say whatever he wishes to say, that that is to be the understanding under the right to allocution between the judge and the defendant and the prosecutor, and that's what we have. Thank you, counsel. 06-10479 is submitted. And we are adjourned until 9 a.m. and if not, please return to your seats. Thank you.
judges: Thompson, Kleinfeld, Thomas